**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| In re: | ) Chapter 13 |
| | ) |
| MARVIN HUNTER, | ) Case No. 11-50920 |
| | ) |
| Debtor. | ) Judge Pamela S. Hollis |
| | ) |

**NOTICE OF HEARING ON**
**MOTION FOR RELIEF FROM THE AUTOMATIC STAY**

VIA ELECTRONIC FILING:

To: Marilyn O. Marshall, Esq. (Trustee)     Ernesto D. Borges (Debtor's counsel)
    224 South Michigan Avenue, Suite 800    Martin A. Lear (Debtor's counsel)
    Chicago, Illinois 60604                  105 W. Madison St., 23rd Floor
                                             Chicago, Illinois 60602

VIA U.S. MAIL

To: Marvin Hunter (Debtor)                   Heather M. Giannino (Creditor's counsel)
    1533 S. Pulaski                          Heavner, Scott, Beyers & Mihlar, LLC
    Chicago, IL 60623                        PO Box 740
                                             Decatur, Illinois, 62525

All parties in interest in the attached service list.

**PLEASE TAKE NOTICE** that on the **24th day of April, 2013, at 9:30 a.m. (Central Time)** or as soon thereafter as counsel may be heard, I shall appear before the Honorable Bankruptcy Judge Pamela S. Hollis or any other judge who may be sitting in her place and stead, in Courtroom 644 in the United States Courthouse, 219 South Dearborn Street, Chicago, Illinois, and present the attached, *Motion for Relief from the Automatic Stay*.

Dated: April 10, 2013          */s/ Darryn C. Beckstrom*
                               Paul D. Collier
                               Megan M. New
                               Darryn C. Beckstrom
                               **KIRKLAND & ELLIS LLP**
                               300 North LaSalle
                               Chicago, Illinois 60654
                               Telephone:  (312) 862-2000
                               Facsimile:  (312) 862-2200

                               *Counsel for Plaintiffs Rosezena Pierce and Rosa Parker*

```
Label Matrix for local noticing          Bayview Loan Servicing, LLC              U.S. Bankruptcy Court
0752-1                                    4425 Ponce De Leon Blvd., 5th Floor      Eastern Division
Case 11-50920                             Coral Gables, FL 33146-1837              219 S Dearborn
Northern District of Illinois                                                      7th Floor
Chicago                                                                            Chicago, IL 60604-1702
Mon Apr  8 17:37:03 CDT 2013

Arnoldharris/Med Business Bureau          Assistant Attorney General               Associate Area Counsel, SB/SE
1460 Renaissance Dr.                      Tax Division                             200 W Adams St
Park Ridge, IL 60068-1349                 P.O. Box 55 Ben Franklin Station         Suite 2300
                                          Washington, DC 20044-0055                Chicago, IL 60606-5231


Bayview Financial Loan                    CDA/Pontiac                              City of Chicago Department of Finance
2601 S. Bayshore Dr.                      PO Box 213                               Bureau of Billing, Noticing
4th Floor                                 Streator, IL 61364-0213                    and Customer Service
Miami, FL 33133-5417                                                               333 South State Street - Suite 330
                                                                                   Chicago, Illinois - IL 60604-3965


City of Chicago Water Dept.               ComEd                                    Commonwealth Edison Company
P.O. Box 6330                             3 Lincoln Center                         3 Lincoln Centre
Chicago, IL 60680-6330                    Attn: Bkcy Group-Claims Department       Oakbrook Terrace, Il 60181-4204
                                          Oakbrook Terrace, IL 60181-4204          Attn: Bankrupcy Dep.


Heavner Scott & Beyers                    Illinois Collection Se                   Illinois Department of Revenue
11 E. Main St.                            P.O. Box 1010                            Bankruptcy Section
Suite 200                                 Tinley Park, IL 60477-9110               P.O. Box 64338
Decatur, IL 62523                                                                  Chicago, IL 60664-0338


(p)INTERNAL REVENUE SERVICE               Internal Revenue Service                 Internal Revenue Service
CENTRALIZED INSOLVENCY OPERATIONS         Official Bankruptcy Address              PO Box 7346
PO BOX 7346                               PO Box 7317                              Philadelphia, PA 19101-7346
PHILADELPHIA PA 19101-7346                Philadelphia, PA 19101-7317


Law Offices Of Ira T. Nevel               Mount Sinai Hospital                     Palisades Collection
175 N. Franklin St.                       1905 Paysphere Circle                    Attn: Bankruptcy
Suite 201                                 Chicago, IL 60674-0091                   3348 Ridge Rd.
Chicago, IL 60606-1847                                                             Lansing, IL 60438-3112


Peoples Gas                               Receivables Management Inc               United States Attorney
130 E. Randolph Dr.                       3348 Ridge Rd                            219 S Dearborn St
Attn: Bankruptcy Dept.                    Lansing, IL 60438-3112                   Chicago, IL 60604-1708
Chicago, IL 60601-6302


Ernesto D Borges                          Marilyn O Marshall                       Martin A. Lear
Law Offices of Ernesto Borges             224 South Michigan Ste 800               Law Offices of Ernesto Borges
105 W Madison Street                      Chicago, IL 60604-2503                   105 West Madison
23rd Floor                                                                         23rd Floor
Chicago, IL 60602-4647                                                             Chicago, IL 60602-4647


Marvin Hunter                             Patrick S Layng
1533 S. Pulaski                           Office of the U.S. Trustee, Region 11
Chicago, IL 60623-1953                    219 S Dearborn St
                                          Room 873
                                          Chicago, IL 60604-2027
```

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

```
Internal Revenue Service
Mail Stop 5010 CHI
230 S Dearborn St
Chicago, IL 60604
```

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

```
(d)Bayview Loan Servicing, LLC            End of Label Matrix
4425 Ponce De Leon Blvd., 5th Floor       Mailable recipients   28
Coral Gables, FL 33146-1837               Bypassed recipients    1
                                          Total                 29
```

## **CERTIFICATE OF SERVICE**

      The undersigned counsel for Plaintiffs Rosezena Pierce and Rosa Parker hereby certifies that on April 10, 2013, she caused the above and foregoing notice and Motion, respectively, to be served upon the above-named persons by electronic filing or, as indicated, by prepaid U.S. Mail sent from 300 N. LaSalle, Chicago, Illinois.

                                            */s/ Darryn C. Beckstrom*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| In re: | ) Chapter 13 |
| MARVIN HUNTER, | ) Case No. 11-50920 |
| Debtor. | ) Judge Pamela S. Hollis |

## MOTION FOR RELIEF FROM THE AUTOMATIC STAY

Rosezena Pierce ("Pierce") and Rosa Parker ("Parker," and with Pierce, collectively, the "Plaintiffs"), by their attorneys, Kirkland & Ellis LLP, request that the Court enter an order granting relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(1) to permit the Plaintiffs to commence an action against Marvin Hunter (the "Debtor"). In support of this motion (this "Motion"), the Plaintiffs respectfully state as follows:

### Introduction

1. By this Motion, the Plaintiffs seek an order, substantially in the form attached hereto as **Exhibit A**, modifying the automatic stay to allow them to commence an action against the Debtor in Illinois state court for purposes of piercing the corporate veil of New Jerusalem Christian Development Corporation ("New Jerusalem") so the Debtor can be held personally liable for a judgment against New Jerusalem arising from a housing discrimination case.

2. As set forth below, the Plaintiffs are entitled to an order pursuant to 11 U.S.C. § 362(d), to modify the automatic stay to allow the Plaintiffs to proceed against the Debtor for the sole purpose of obtaining a liability determination. Collection on any judgment obtained in the action during the Debtor's bankruptcy case would only occur through the Court (as defined herein).

**Jurisdiction**

3.  The United States Bankruptcy Court for the Northern District of Illinois (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

4.  Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

5.  The statutory basis for the relief requested herein is section 362(d) of title 11 of the United States Code (the "Bankruptcy Code").

**Background**

6.  On December 21, 2011, the Debtor filed a petition with the Court under chapter 13 of the Bankruptcy Code. The Debtor submitted a plan of reorganization on this same date, which the Court confirmed on April 9, 2012. The meeting of section 341 creditors was held on February 16, 2012, and the deadline for filing proofs of claim was May 2, 2012. The Plaintiffs were not scheduled as creditors by the Debtor, and as such, did not receive notice of either the section 341 meeting or the deadline for filing proofs of claim.[1]

7.  The Plaintiffs filed a complaint with the City of Chicago Commission on Human Relations (the "Commission") on April 2, 2007, alleging New Jerusalem and the Debtor violated section 5-8-030 of the Chicago Municipal Code regarding source of income discrimination by refusing them opportunities to purchase homes because of their source of income. See City of Chicago Comm'n on Human Relations Final Ruling on Liab. and Relief, Feb. 16, 2011, at 1 (the "Final Ruling"), attached hereto as **Exhibit B**.

---

[1] Because the Plaintiffs were not listed or scheduled in time to permit them to file a proof of claim in the Debtor's bankruptcy case and did not otherwise obtain notice of the case before the claims bar deadline, any discharge the Debtor is entitled to receive pursuant to section 1328 of the Bankruptcy Code does not discharge the debt asserted by the Plaintiffs in this Motion. See 11 U.S.C. § 1328(a)(2); In re Washington, 483 B.R. 871, 874 (Bankr. E.D. Wis. 2012) ("Under Bankruptcy Code §§ 1328(a)(2) and 523(a)(3), the discharge does not include the debt owed to a creditor whose claim is not scheduled and who does not have notice of the bankruptcy.").

8.  In 2006, the Plaintiffs, who were pre-qualified for a residential mortgage, were participants in the Choose to Own Housing Choice Voucher Home Ownership Program ("Choose to Own").  Choose to Own is a City of Chicago program that provides opportunities for low-income families to purchase a home by providing vouchers to finance a portion of their mortgage if they meet certain eligibility requirements.  Final Ruling 5.  Choose to Own is comparable to the federal Section 8 housing program provided to renters.  Id.

9.  During this same time, New Jerusalem was a participant in the New Homes for Chicago program ("New Homes"), which is also provided by the City of Chicago.  Id. at 6.  New Homes provides subsidies and benefits to developers who agree to develop vacant land in disadvantaged neighborhoods and sell a percent of the developed properties to low income families at a price below fair market value.  Id.  New Homes also provides city and federal government grants to low income purchasers of homes made available through the program by participating developers.  Id.

10.  Some of the benefits New Jerusalem was entitled to receive for participating in New Homes included (a) eligibility to receive free City of Chicago-owned lots on which to build housing units, (b) waiver of certain City of Chicago fees and deposits, and (c) developer subsidies of up to $870,000, plus home purchase subsidies of up to $2,040,000.  Id. at 16 n.4.

11.  In 2006, the Plaintiffs completed the eligibility requirements to participate in both Choose to Own and New Homes.  Id. at 6.  Pierce subsequently signed a purchase agreement with New Jerusalem for the purchase of a single family home that was to be built in an area developed by the Debtor and paid $1,000 in earnest money.  Id.  Parker also signed a purchase agreement with New Jerusalem for the purchase of a to-be-built single family home and provided New Jerusalem with $19,500 in earnest money.  Id.  The Plaintiffs both informed New

3

Jerusalem's broker of their status as qualified participants in the Choose to Own and New Homes programs and were assured by the broker that they were eligible to contract for their new homes with New Jerusalem. Id.

12.    But when it came time for New Jerusalem to sign the required CHAC Rider, which was required to be signed by all those selling to Choose to Own participants, New Jerusalem refused to sign it despite the Plaintiffs' attorney informing New Jerusalem of its obligation to sign it as a requirement of selling to Choose to Own participants. Id. at 7.

13.    New Jerusalem did not sign the riders because it believed that it was not in its "best interest to do those transactions." Id. This was despite the fact that the Plaintiffs were fully qualified to purchase homes in the Debtor's development, with "no apparent material risk or harm to [New Jerusalem] from signing the CHAC Waiver authorizing additional inspections and enabling [the Plaintiffs] to utilize the subsidies offered under Choose to Own." Id. at 16. In the end, the sale of the homes to the Plaintiffs could not occur. Id. at 67

14.    The Commission found that New Jerusalem denied legally protected rights to the Plaintiffs, who were qualified to purchase homes under Choose to Own and New Homes, yet still benefited from the significant monetary and other considerations it received through New Homes. Id. at 16. New Jerusalem knew it was receiving these benefits from New Homes as an incentive to develop and provide affordable housing for low and moderate income households in Chicago, but deliberately chose not to carry out its responsibilities under the program. Id.

15.    On February 16, 2011, the Commission issued the Final Ruling, ordering New Jerusalem to pay damages in the amount of $80,000 plus interest to Plaintiff Pierce and damages in the amount of $30,000 plus interest to Plaintiff Parker.[2] Id. at 21. The Cook County Chancery

---

[2] The Commission dismissed the Debtor, in his individual capacity, as a respondent in the proceeding because of a lack of evidence proving that the Debtor personally discriminated against the Plaintiffs. Final Ruling 8.

4

Court entered an order on March 11, 2013, permitting the Plaintiffs to enforce the judgment against New Jerusalem. See City of Chicago v. New Jerusalem Christian Dev. Corp., Case No. 12 CH 34531 (Ill. Ch. Ct. March 11, 2013), attached hereto as **Exhibit C**.

16.     When the Plaintiffs sought to attempt collection on the judgment, they learned that New Jerusalem had voluntarily dissolved in November 2012. See Articles of Dissolution for New Jerusalem Christian Development Corp. (the "Articles of Dissolution"), attached hereto as **Exhibit D**. The Plaintiffs then intended to pierce the corporate veil and commence collection actions against New Jerusalem's directors and officers, including the Debtor.[3] Based on information and belief, the Plaintiffs believed that New Jerusalem was merely serving as an "alter ego" for the Debtor, and that it was simply a sham operation that failed to observe corporate formalities. But the Plaintiffs recently learned that the Debtor filed for relief under chapter 13 of the Bankruptcy Code in December 2011, and therefore, the automatic stay prevented them from commencing an action against the Debtor.

## Basis for Relief

**I.     The Automatic Stay Should be Modified to Permit Litigation to Proceed.**

17.     Section 362(d) of the Bankruptcy Code provides that:

> [o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—(1) for cause . . . .

11 U.S.C. § 362(d).

### A.     Plaintiffs Have Standing to Move for Relief From the Stay.

18.     Relief from the automatic stay is available to any party in interest. See 11 U.S.C. § 362(d). The Bankruptcy Code does not define a "party in interest." But section 1109(b) of the

---

[3] The Articles of Dissolution, filed by the Debtor, refer to the Debtor as an officer.

5

Bankruptcy Code, which is not applicable in chapter 13 cases but has been applied by courts to such cases, clearly indicates that a "party in interest" includes both creditors and parties with a legally protected interest in the case that could be affected by its outcome.  See, e.g., In re Toliver, No. 97-81811, 1997 WL 33475233, at *1 (Bankr. C.D. Ill. Aug. 6, 1997) (relying on interpretation of "party in interest" under section 1109(b) to determine standing to request relief from the automatic stay in a chapter 13 case).

19.    The Seventh Circuit interprets section 1109(b) very broadly, stating that "anyone who has a legally protected interest that could be affected by a bankruptcy proceeding is entitled to assert that interest with respect to any issue to which it pertains." In re James Wilson Assocs., 965 F.2d 160, 169 (7th Cir. 1992).  Therefore, "'a party in interest' under section 362(d) must be determined on a case by case basis with reference to the interest asserted and how said interest is affected by the automatic stay." Toliver, 1997 WL 33475233, at *1.

20.    In this case, the Plaintiffs are a party in interest because they have a legally protected interest that is affected by this bankruptcy proceeding—their ability to seek a judgment against the Debtor has been affected by the Debtor's automatic stay.  If the Plaintiffs are not able to obtain relief from the automatic stay, then they would not be able to pursue their action against the Debtor in any forum.

      **B.    "Cause" Exists to Modify the Stay.**

21.    The Bankruptcy Code does not define "cause" for purposes of section 362(d)(1). Therefore, courts determine relief from the automatic stay, in their discretion, on a case-by-case basis. In re Benalcazar, 283 B.R. 514, 535–36 (Bankr. N.D. Ill. 2002); see also In re Holtkamp, 669 F.2d 505, 507 (7th Cir. 1982) ("[T]he statute commits the decision of whether to lift the stay to the discretion of the bankruptcy judge . . . .").

6

22. In determining whether to lift an automatic stay for cause to allow litigation to commence or continue in another forum, the Seventh Circuit applies a balancing test that examines several factors: (a) whether any "great prejudice" to either the bankruptcy estate or the debtor will result, (b) whether the hardship to the plaintiff by maintenance of the stay considerably outweighs the hardship to the debtor, and (c) the probability of the plaintiff's prevailing on the merits of their claim. In re Fernstrom Storage & Van Co., 938 F.2d 731, 735 (7th Cir. 1991).

23. Each of the foregoing factors weighs in favor of granting the Plaintiffs relief from the automatic stay.

### 1) No Prejudice to the Bankruptcy Estate and the Debtor

24. Modifying the stay to permit the Plaintiffs both to establish the Debtor's liability and to fix and liquidate the amount of the Plaintiffs' corresponding claim against the Debtor's estate would not prejudice the Debtor. See In re Parkinson, 102 B.R. 141, 142 (Bankr. C.D. Ill. 1988) ("Courts have regarded the opportunity to litigate the issue of liability as a significant right which cannot be easily set aside, despite the existence of a bankruptcy proceeding.").

25. Courts have found that relief from the automatic stay is appropriate where the plaintiff simply seeks a declaration of liability and does not take action outside of the bankruptcy court to collect on any judgment received. See, e.g., In re Bock Laundry Mach. Co., 37 B.R. 564, 567 (Bank. N.D. Ohio 1984) ("The automatic stay was never intended to preclude a determination of tort liability and the attendant damages. It was merely intended to prevent a prejudicial dissipation of a debtor's assets. A lifting of the stay to allow a plaintiff-creditor to determine liability will not affect the estate . . . . In this respect, a relief from the stay will not violate the purpose for which it was imposed.").

7

26. It is true that the Debtor will incur litigation expenses if the Debtor chooses to defend himself in a state court action. But it is well-established that a debtor's costs of defending a lawsuit are "ordinarily considered an insufficient basis for denying relief from the stay." In re Tricare Rehab. Sys., Inc., 181 B.R. 569, 575 (Bankr. N.D. Ala. 1994); see also In re Winterland, 101 B.R. 547, 549 (Bankr. C.D. Ill. 1988) (cost to the debtor of defending an action does not constitute "great prejudice" to either the debtor or the bankruptcy estate).

27. Finally, the Plaintiffs would not have an advantage over other creditors of the bankruptcy estate if the stay is modified to permit them to pursue a liability determination against the Debtor because collection on any judgment obtained during this bankruptcy case would only occur through the Court. See In re Patel, No. 10-34767, 2010 WL 3239128, at *2 (Bankr. S.D. Tex. Aug. 16, 2010) ("Since only liquidation, not collection, of the claims is sought, allowing the state court litigation to proceed would not prejudice the rights of other creditors.").

### 2) Hardship to the Plaintiff Outweighs Hardship to the Debtor

28. The hardship to the Plaintiffs by maintenance of the stay considerably outweighs the hardship to the Debtor. The Plaintiffs, who have litigated the underlying matter for the past *six* years, have already suffered significant hardship as a result of the Debtor's deliberate and egregious delays during the housing discrimination case before the Commission, the discrimination engaged in by the Debtor's alter ego, New Jerusalem, and the Plaintiffs' inability to participate in the Debtor's bankruptcy case as a result of not receiving notice of the case. The Plaintiffs will continue to suffer hardship until they can bring this matter to close.

*(a) Debtor's Significant and Intentional Delays*

29. During the case before the Commission, both the Debtor and New Jerusalem (collectively, the "Defendants") repeatedly created obstacles for the Plaintiffs to litigate their

claims. The Defendants continually failed to appear for scheduled hearings. Final Ruling 2–3. They also refused to respond to the Plaintiffs' discovery requests and recurrently failed to cooperate with or adhere to the Commission's orders and rulings. Id. at 17. Notably, the Commission found that the Defendants "completely and willfully disregarded the laws, regulations, and procedures applicable in [the proceeding]." Id.

30.     In January 2010, the Defendants' attorney filed a motion to withdraw as the Defendants' attorney as well as a motion to vacate or modify sanctions issued against him personally (the "Motion to Vacate"), attached hereto as **Exhibit E**. The attorney cited irreconcilable differences with the Debtor and detailed numerous instances of the Debtor failing to respond to his communications and cooperate in the defense against the Plaintiffs' claims. Motion to Vacate ¶¶ 6, 8. The Debtor went so far as to tell the attorney to take no action against the discovery requests. Id. The Defendants did not file an objection to either their attorney's motion to withdraw as counsel or the Motion to Vacate. Final Ruling 2.

31.     Denying the Plaintiffs relief from the automatic stay will only compound the significant and intentional delays already created by the Debtor himself by another *four* years as the Plaintiffs wait for his bankruptcy case to end. If the Plaintiffs must wait several years to commence an action against the Debtor, it is clear that the Plaintiffs will face substantial hardship by such a delay, as it will become increasingly difficult—if not impossible—for the Plaintiffs to gather evidence to prosecute their claims against the Debtor. See Bock, 37 B.R. at 566 ("A number of Courts have attributed a considerable weight to the fact that a plaintiff, by having to wait, may effectively be denied an opportunity to litigate. The aging of evidence, loss of witnesses, and crowded court dockets are factors which contribute to these hardships."); Winterland, 101 B.R. at 548 (same); In re 15375 Mem'l Corp., 382 B.R. 652, 690 (Bankr. D.

9

Del. 2008) (lifting stay because, among other reasons, plaintiff was "prejudiced by the lapse of time in terms of its ability to effectively prosecute its claims").

32. Further, the Plaintiffs will experience hardship if they are not able to commence an action against the Debtor because alter ego liability in Illinois is joint and several. If the corporate veil of New Jerusalem is pierced, the officers and directors are jointly and severally liable for the full amount of any judgment. If the Plaintiffs do not obtain relief from the automatic stay, then they would have to commence two lawsuits—one against the non-debtor officers and directors of New Jerusalem and another against the Debtor—because the statute of limitations on a claim against the non-debtor directors and officers will expire before the end of the Debtor's bankruptcy case.[4] This would constitute considerable hardship on the Plaintiffs because they would have to litigate the same issue twice.

*(b) Substantial Hardship Caused by Debtor's Alter Ego*

33. The Plaintiffs also have experienced substantial hardship at the hands of New Jerusalem, the Debtor's alter ego. Denying a modification of the stay would only compound this hardship. Notably, the effect of New Jerusalem's discriminatory refusal to sell to the Plaintiffs has lasted for years. New Jerusalem refused to sell to either Plaintiff a home upon learning that both were Choose to Own participants and yet still held onto the Plaintiffs' earnest money while ignoring their repeated inquiries regarding New Jerusalem's refusal to sell each of them a home. Final Ruling 7. This deliberate action alone of withholding the Plaintiffs' money without explanation prevented the Plaintiffs from finding suitable alternative housing because too much time had passed for them to continue being qualified buyers under Choose to Own. Id. at 7–8.

---

[4] The Illinois General Not for Profit Corporation Act provides that any action or proceeding against a dissolved non-profit corporation's directors and officers must be commenced within two years after the date of such dissolution. *See* 805 ILCS 105/112.80.

10

34. Further, Pierce completely lost the opportunity to purchase a home while she was qualified to do so under the Choose to Own Program and Parker lost the opportunity to purchase a house that would have allowed her to care for her disabled sister. Id. at 14–15. Pierce currently rents and Parker must travel regularly to take care of her sister. Id. While Parker was able to purchase a used home outside of the program, it needed costly repairs and is located in a less safe area than the home she was going to purchase from New Jerusalem. Id. at 15.

35. Courts have held that the importance of enforcing civil rights laws mitigates in favor of granting relief from the automatic stay. See, e.g., In re Santa Clara Cnty. Fair Ass'n, 180 B.R. 564, 566–67 (9th Cir. BAP 1995) (affirming district court decision to lift stay based in part on fact that "public policy favored the resolution of civil rights actions and outweighed any competing policy served by the automatic stay under the circumstances"); Paden v. Union for Experimenting Colls. & Univs., 7 B.R. 289, 291 (N.D. Ill. 1980) (holding that modifying the automatic stay in employment discrimination case "ensures the expeditious consideration of Title VII suits, an important priority of Congress"). This case is no exception.

*(c) Missed Opportunity to Participate in the Debtor's Bankruptcy Case*

36. Finally, the Plaintiffs faced hardship when they were denied the opportunity to participate in the Debtor's bankruptcy case because they were not named as creditors in the Debtor's chapter 13 filing and did not receive any notice of the filing. Instead, the Plaintiffs only became aware of the Debtor's bankruptcy case when they attempted to commence an action against the Debtor in state court. By then, the section 341 meeting had already been held and the Court had confirmed the Debtor's chapter 13 plan. As such, the Plaintiffs were foreclosed from having an opportunity to appear and participate in the Debtor's chapter 13 case. Given these

11

circumstances, modification of the automatic stay is an appropriate remedy to protect the Plaintiffs' interests. See In re Sykes, 451 B.R. 852, 859 (Bankr. S.D. Ill. 2011).

### 3) Probability of the Plaintiffs' Prevailing on the Merits

37. This factor weighs in favor of the Plaintiffs because they can demonstrate that their claim against the Debtor is "not frivolous." Fernstrom, 938 F.2d at 737; see also In re Benbo of Ga., Inc., No 91-10931, 1992 WL 12004318, at *3 (Bankr. S.D. Ga. Mar. 2, 1992) (finding that even with insufficient evidence before the court to make a determination regarding probability of the plaintiff's succeeding on the merits, setting forth a "cause of action which offers some prospect of recovery" balances this factor in favor of modifying the stay).

38. In Illinois, a court can pierce the veil of a non-profit corporation where the corporation is "merely the alter ego or business conduit of another person or entity." Fontana v. TLD Builders, Inc., 362 Ill. App. 3d 491, 500 (2d Dist. 2005) (citation omitted). To pierce the corporate veil and hold officers and directors liable for a judgment against the corporation, "(1) there must be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist; and (2) circumstances must exist such that adherence to the fiction of a separate corporate existence would sanction a fraud, promote injustice, or promote inequitable consequences." Id.

39. Factors courts consider in determining whether there is a unity of interest and ownership include, among others, (a) failure to observe corporate formalities, (b) insolvency of the debtor corporation, (c) nonfunctioning of the other officers and directors, and (d) whether the corporation is a mere façade for the operation of the dominate stakeholders. See id. at 503.

40. Regarding the first element, the Plaintiffs can demonstrate that there was a unity of interest and ownership between the Debtor and New Jerusalem. *First*, during its existence,

12

New Jerusalem failed to observe corporate formalities. New Jerusalem has not always maintained at least three board members, as required by Illinois non-profit law. See Return of Org. Exempt from Income Tax, Form 990 for New Jerusalem Christian Dev. Corp., Year 2009, attached hereto as **Exhibit F**. Further, even when New Jerusalem allegedly maintained three board members, both state and federal filings by New Jerusalem indicate that the composition of the board and the titles of the officers frequently changed, suggesting that New Jerusalem was either changing its bylaws frequently or, more likely, failing to observe them. Upon information and belief, the Debtors were also not observing other corporate formalities.

   41. *Second*, New Jerusalem has suffered from the non-functioning of its other officers and directors. The Debtor has held himself out as the "principal owner" of New Jerusalem, even though non-profit corporations do not have owners because they act in the public interest and not for the benefit of their directors. Final Ruling 8. This fact alone highlights the Debtor's dominance over the organization and the way he viewed his role in the corporation.

   42. Further, during the four year action before the Commission, the other officers and directors of New Jerusalem completely failed to aid in the defense of New Jerusalem. Instead, they either allowed the Debtor to refuse to defend New Jerusalem before the Commission proceedings, thereby violating their fiduciary duties to the corporation, or had no knowledge of the proceedings due to their complete lack of involvement in the corporation. See Motion to Vacate ¶¶ 6, 8 (discussing the Debtor's lack of cooperation in the defense of New Jerusalem).

   43. The Debtor was aware of the potential liability involved in the case. Id. ¶ 2. But, as noted above, when the Debtor was served with discovery requests, he repeatedly instructed his attorney to take no action on them. Id. ¶¶ 6, 8. The attorney repeatedly attempted to contact the Debtor when the Commission ordered discovery sanctions, but the Debtor never responded.

Id. ¶ 6.  Instead, the Debtor continued to be non-cooperative with the attorney representing New Jerusalem in this case.  Further, at the time the Defendants' attorney filed the Motion to Vacate, the Debtor had not paid the attorney for over three years of representation on the matter. Id. ¶ 23.  Once the Commission granted the attorney leave to withdraw in 2010, the Debtor made no effort to obtain new counsel in this case or defend New Jerusalem *pro se*.

44.     *Third*, New Jerusalem's tax exempt status was automatically revoked by the IRS, effective on May 15, 2010, for failing to file a Form 990 for three consecutive years (2007, 2008, and 2009), further suggesting that the Debtor never had any intention of sustaining the corporation as early as 2008.  See IRS Automatic Revocation of Exemption for New Jerusalem, attached hereto as **Exhibit G**.

45.     Regarding the second element, New Jerusalem's separate corporate existence would promote injustice and inequitable consequences because it would allow the Debtor to skirt responsibility by creating a sham corporation to protect himself from liability, while reaping the financial benefits from the New Homes program and allowing the injustices experienced by the Plaintiffs at the hands of New Jerusalem to continue.

46.     For the reasons discussed above, the Plaintiffs can demonstrate that their claim against the Debtor is "not frivolous."

**II.     Conclusion.**

47.     In sum, the Court should permit the Plaintiffs to commence an action against the Debtor in Illinois state court for purposes of piercing the corporate veil of New Jerusalem, with the exception that collection on any judgment obtained in the action during the Debtor's bankruptcy case would only occur through the Court.  See Tricare Rehab., 181 B.R. at 575, 578–79 (approving and ordering similar relief from stay).

WHEREFORE, the Plaintiffs respectfully request that the Court enter an order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and such other and further relief as the Court deems appropriate.


Dated:  April 10, 2013
/s/ Darryn C. Beckstrom
Paul D. Collier
Megan M. New
Darryn C. Beckstrom
**KIRKLAND & ELLIS LLP**
300 North LaSalle
Chicago, Illinois 60654
Telephone:   (312) 862-2000
Facsimile:    (312) 862-2200

*Counsel for Plaintiffs Rosezena Pierce and Rosa Parker*

15

# **EXHIBIT A**

**Proposed Order**